**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT COAR, | : | Civil Action No. 05-2260 (RBK) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| KATHRYN MCFARLAND, et al.,, | : | |
| | : | |
| Respondents. | : | |
| | : | |

**APPEARANCES:**

    ROBERT COAR, #121875B
    South Woods State Prison
    215 Burlington Road South
    Bridgeton, New Jersey  08302
    Petitioner Pro Se

    KIMBERLY ANN SKED, Deputy Attorney General
    ATTORNEY GENERAL OF NEW JERSEY
    P.O. Box 112
    Trenton, New Jersey  08625-0112
    Attorneys for Respondents

**KUGLER**, District Judge

Robert Coar filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a decision of the New Jersey State Parole Board denying release on parole and imposing a 29-month future parole eligibility term.[1]  Respondents filed an Answer, accompanied by certified copies of the record of proceedings, a motion to file certain exhibits under seal, and a

---

[1] Petitioner initially labeled the Petition under 28 U.S.C. § 2241.  After notice from the Court, see Castro v. United States, 540 U.S. 375 (2003); Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), Petitioner elected to recharacterize the Petition under 28 U.S.C. § 2254.

motion to correct the docket. Petitioner filed a reply brief and appendix. For the reasons expressed below, the Court dismisses the Petition with prejudice, denies Respondents' motions, and declines to grant a certificate of appealability.

## I.  BACKGROUND

On October 1, 1999, after a jury convicted Petitioner of two counts of sexual assault and one count of endangering the welfare of a child, the Superior Court of New Jersey, Law Division, Passaic County, imposed an aggregate 14-year term of incarceration. State v. Coar, Indictment No. 95-11-1293-I j. of conviction (Law Div. Oct. 1, 1999).

Although the date on which Petitioner first became eligible for parole is not clear from the record, a two-member panel of the New Jersey State Parole Board denied parole on May 21, 2002, and imposed a 36-month future eligibility term. Petitioner appealed the two member panel's decision to the full board. On December 18, 2002, after the panel had reconsidered the case and reviewed Petitioner's submissions and objections, the parole board rejected the grounds raised by Petitioner and affirmed the ruling of the panel.

Petitioner appealed the Board's final decision to the Superior Court of New Jersey, Appellate Division. Eventually, on March 11, 2004, the Appellate Division granted the Parole Board's motion to remand the case to the Board to review the accuracy of the future parole eligibility term, denied Petitioner's cross-motion seeking reversal of the denial of parole, and retained jurisdiction over the case. On April 7, 2004, the Parole Board ruled that the 36-month future parole eligibility term was not in compliance with parole regulations, see N.J. Admin. Code § 10A:71-3.21(a), and amended the final decision denying parole to impose a 29-month

future parole eligibility term.[2]  On October 8, 2004, the Appellate Division issued an opinion affirming the decision of the Parole Board denying release on parole and imposing a 29-month future parole eligibility term.  Specifically, the Appellate Division ruled that the Parole Board applied the correct legal standard for determining whether Petitioner was fit for parole, and properly considered the relevant factors.  The Appellate Division found that there was sufficient credible evidence in the record to support the Board's finding that there was a substantial likelihood that Petitioner would commit another crime if released on parole.  On January 28, 2005, the Supreme Court of New Jersey denied certification.

     On April 5, 2005, Petitioner executed the § 2254 Petition presently before this Court.  The Clerk received the Petition on April 28, 2005.  Petitioner generally asserts that the final decision of the Parole Board violates his rights to due process of law and equal protection of the laws guaranteed by the Fourteenth Amendment, as well as the First, Fifth, Sixth, and Eighth Amendments, and the Double Jeopardy and Ex Post Facto Clauses.  Specifically, he contends that (1) the Parole Board's denial of parole violates due process because the finding that he will commit a crime if released on parole is not supported by a preponderance of the evidence; (2) the Board violated the Ex Post Facto Clause by denying parole based on Petitioner's failure to participate in rehabilitative programs; (3) the Parole Board violated the Double Jeopardy Clause by denying parole based on the nature of the crime; (4) the Parole Board violated Petitioner's Fifth Amendment right against self-incrimination by denying parole on the ground that Petitioner maintains his innocence; (5) the failure of Appellate Division Judge Yannotti to recuse himself from Petitioner's case violated Petitioner's Sixth Amendment right to an impartial jury and his

---

[2] Petitioner became eligible for parole again on January 28, 2006.

First Amendment right to petition the government for redress of grievances because Judge Yannotti had represented the Parole Board in <u>Trantino v. New Jersey State Parole Board</u>, 154 N.J. 19 (1998); and (6) the Parole Board violated its own regulations by failing to decide his administrative appeal within 45 days of filing.  Petitioner seeks a declaratory judgment and an order releasing him on parole and enjoining further constitutional violations.

The government filed an Answer, accompanied by a Brief, an Appendix, and a Confidential Appendix.  The government also filed a motion to correct the docket to name the proper respondents and a motion to file certain documents under seal.  Petitioner filed a Reply Brief.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A district court must give deference to determinations of state courts.  <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert. denied</u>, 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996).  Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary."  <u>Stevens v. Delaware Correctional Center</u>, 295 F.3d 361,

368 (3d Cir. 2002). Where a federal claim was "adjudicated on the merits" in state court proceedings [3], § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.

---

[3] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir.2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. Rompilla, 355 F.3d at 247.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.  DISCUSSION

A.  Untimeliness of Parole Board Decision

In Ground Six, Petitioner seeks habeas relief on the ground that the Parole Board violated regulations governing the Board by failing to rule on his case within 45 days. The problem with Ground Six, however, is that it does not assert a violation of federal law. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

Although Petitioner asserts that the parole board violated New Jersey law, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

Moreover, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). As the United States Court of Appeals for the Third Circuit observed in another habeas case challenging a decision of the New Jersey State Parole Board,

> While one might second-guess the Parole Board's decision, and state court's approval of it, it is not the role of the federal courts to do so. Our review, and that of the District Court, is quite distinct from that of the state appellate courts. The Supreme Court has explained that because our review on habeas is collateral, and not supervisory, not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice.

Hunterson v. DiSabato, 308 F.3d 236, 244-45 (3d Cir. 2002) (citations and internal quotation marks omitted). Because Ground Six does not assert a violation of federal law, the claim is not cognizable under § 2254.[4]

B. Substantive Due Process

In Ground One, Petitioner asserts that the decision denying parole violated due process because the board's finding that Petitioner would commit another crime if released on parole was not supported by credible evidence in the record, and was arbitrary and capricious.

The Supreme Court has held that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful governmental actions regardless of the fairness of the procedures used to implement them." Foucha v. Louisiana, 504 U.S. 71, 80 (1992).

---

[4] Procedural due process requires a parole board to provide notice of the parole eligibility hearing, an opportunity for the inmate to appear at the hearing and present statements and letters in his own behalf, and a statement from the parole board informing the inmate why parole was denied. See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 14-16 (1979). Failure to render a decision within 45 days does not violate procedural due process.

However, the Supreme Court has made clear that, when an executive action is at issue, only the most egregious, conscience-shocking conduct will be considered arbitrary in the constitutional sense. County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998) ("conduct intended to injure in some way unjustifiable by any government interest is the sort of action most likely to rise to the conscience-shocking level").

The Appellate Division rejected Petitioner's due process claim as follows:

> We find that the Board applied the correct legal standard for determining whether Coar was fit for parole, and in doing so, properly considered the relevant factors under N.J.A.C. 10A:71-3.11(b). Moreover, there was sufficient credible evidence for the Board's finding that there was a substantial likelihood that Coar would commit another crime if released on parole.
>
> In reaching its decision to deny parole, the Board relied upon several factors. First, the Board gave weight to the indisputable fact that Coar had been convicted of multiple crimes of a serious nature. As stated previously, Coar was convicted in 1995 of two counts of sexual assault and a count of endangering the welfare of a child. The record shows that, at the time of the sexual assaults, one of the victims was eight years old and the other was ten years old. Coar was sentenced to two consecutive seven-year sentences for all three convictions.
>
> The Board also found that Coar lacked insight into his criminal behavior. At the panel hearing of May 21, 2002, Coar denied any responsibility for the crimes. He stated that the "bottom line is that I didn't do this." Coar also stated that the criminal trial was "illegal." The psychological evaluations additionally revealed a continued refusal by Coar to accept responsibility for the crimes. Based on this evidence, the Board could reasonably determine that Coar had a lack of insight into his criminal behavior.
>
> The Board also determined that Coar had not participated in treatment programs to address his behavioral problems. The record supports this finding as well. The Parole Board's case summary dated May 16, 2002 notes that Coar had not completed any

8

>programs, he was not participating in any programs and he was not on a waiting list for admission to any programs.
>
>In reaching its decision to deny parole, the Board considered certain mitigating factors, specifically the fact that Coar had remained infraction-free while in prison and had had an average to above average institutional record. In addition, Coar had no prior convictions, denied substance abuse and had suitable parole plans. Although these factors weighed in Coar's favor, the Board could reasonably determine that the nature of Coar's crimes, his lack of insight into his criminal conduct and his failure to participate in institutional programs to address behavioral problems warranted a finding by the Board that there was a substantial likelihood that Coar would commit another crime if released on parole.

Coar v. N.J. State Parole Bd., No. A-0357-02T3 slip op. at 5-6 (App. Div. Oct. 8, 2004).

This Court holds that the Appellate Division's adjudication of Petitioner's substantive due process claim was not an unreasonable application of United States Supreme Court precedent. See Hunterson, 308 F.3d at 247-48.

C.  Ex Post Facto

Petitioner asserts in Ground Two that "the Parole Board's denial of parole based on any lack of programming is an improper ex post facto application of the 1997 revisions, expressly forbidden by Article I, section 10 of the United States Constitution [because] the 1997 amendment concerning rehabilitation does not apply to inmates sentenced before 1997." (Pet. ¶¶ 35-36.)

Article I, § 10, Clause 1, of the United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto law." U.S. Const. art. I, § 10, Cl. 1. One function of the *Ex Post Facto* Clause is "to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000). Such laws "implicate

9

the central concerns of the *Ex Post Facto* Clause: 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" Lynce v. Mathis, 519 U.S. 433, 441 (1997) (quoting Weaver v. Graham, 450 U.S. 24, 30 (1981)).  To fall within the *ex post facto* prohibition, a law must be "retrospective - that is, it must apply to events occurring before its enactment - and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce, 519 U.S. at 441 (citations and internal quotation marks omitted).

A retroactive change in parole regulations implicates the *Ex Post Facto* Clause when "objectively the new statute 'lengthen[s] the period that someone in petitioner's position must spend in prison.'" Lynce, 519 U.S. at 442 (quoting Weaver, 450 U.S. at 33.)  The relevant inquiry is whether retroactive application of the amendment created "a sufficient risk of increasing the measure of punishment attached to the covered crimes." Garner, 529 U.S. at 250.

In this case, the Appellate Division rejected Petitioner's ex post facto claim on the ground that the Parole Board did not apply the 1997 amended parole eligibility standard to Petitioner's case, but applied the standard in effect in 1992 and 1993, when Petitioner committed the crimes. Specifically, the Appellate Division found:

> Coar argues that the Board erroneously applied the standard in N.J.S.A. 30:4-123.53(a) in determining whether Coar should be released on parole.  The statute was enacted in 1997, and changed the standard governing parole release. L. 1997, c. 217; Assembly and Public Safety Committee Statement Regarding Assembly No. 23.  We find no merit in this argument.
>
> The statute provides that an inmate shall be released on parole at the time of parole eligibility unless the record establishes by a

10

> preponderance of the evidence that the inmate "has failed to cooperate in his or her own rehabilitation" or that there is a "reasonable expectation that the inmate will violate conditions of parole" upon release. N.J.S.A. 30:4-123.53(a). However, as the Board's final decision makes clear, the Board did not apply this [revised] standard to Coar. It applied the standard that was in effect when Coar committed his crimes. Although the Board considered Coar's failure to participate in institutional programs, it did so in the context of deciding whether there was a substantial likelihood he would commit another crime if released on parole. This does not represent an application of the standard in N.J.S.A. 30:4-123.53(a).

Coar v. N.J. State Parole Bd., No. A-0357-02T3 slip op. at 6-7 (App. Div. Oct. 8, 2004).

In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that state law defines the parole eligibility standard. In 1992 and 1993, New Jersey law provided that "[a]n adult inmate shall be released on parole at the time of parole eligibility, unless information supplied in the report filed . . . or developed or produced at a hearing . . . indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at this time." N.J. Stat. Ann. § 30:4-123.53 (1992), amended by N.J. Stat. Ann. § 30:4-123.53(a), L. 1997, c. 217; Assembly and Public Safety Committee Statement Regarding Assembly No. 23. The Appellate Division ruled that the Parole Board denied Petitioner parole pursuant to this parole eligibility standard, and that the Board considered Coar's failure to participate in rehabilitative programs in the context of deciding whether there was a substantial likelihood that he would commit another crime if released on parole.

The significance of Petitioner's failure to participate in rehabilitative programs to the parole eligibility standard in effect prior to the 1997 amendment is a question of state law.  If this Court ruled that the Appellate Division improperly interpreted the 1992 parole eligibility standard in regard to the significance of rehabilitation, then this Court would sit as super state supreme court for the purpose of determining whether the interpretation of the parole eligibility standard was correct under state law, which this Court is not permitted to do.

Petitioner cites no Supreme Court authority for the proposition that the parole eligibility standard used by the Parole Board violated the Ex Post Facto Clause.  He is therefore not entitled to habeas relief on Ground Two.

D.  Double Jeopardy

Petitioner argues in Ground Three that the Parole Board violated the Double Jeopardy Clause of the United States Constitution by denying parole based on the nature of the crimes.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  This guarantee is applicable to the States through the Fourteenth Amendment.  See Benton v. Maryland, 395 U.S. 784 (1969).  Three separate guarantees are "embodied in the Double Jeopardy Clause: It protects against a second prosecution for the same offense after acquittal [or mistrial], against a second prosecution for the same offense after conviction, and against multiple

punishments for the same offense." [5] <u>Justices of Boston Mun. Court v. Lydon</u>, 466 U.S. 294, 306-307 (1984); see also <u>Illinois v. Vitale</u>, 447 U.S. 410, 415 (1980).

The threshold question under the Clause is whether the challenged provision imposes "punishment." <u>Artway v. Attorney General of State of N.J.</u>, 81 F.3d 1235, 1253 (3d Cir. 1966). Petitioner's double jeopardy claim fails, however, because denial of parole release is not a punishment.

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards has extinguished that liberty.

<u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979); see also <u>Lawson v. Cavell</u>, 425 F.2d 1350 (3d Cir. 1970) (revocation of parole and requiring petitioner to serve the remainder of his maximum sentence did not violate double jeopardy because it did not constitute imposition of a new punishment). Because the New Jersey courts' adjudication of Petitioner's double jeopardy claim was not contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court of the United States, Petitioner is not entitled to habeas relief on Ground Three.

---

[5] The primary goal of barring reprosecution after acquittal is to prevent the State from mounting successive prosecutions and thereby wearing down the defendant. <u>Id.</u>; <u>Green v. United States</u>, 355 U.S. 184, 187-188 (1957). The primary purpose of foreclosing a second prosecution after conviction is to prevent a defendant from being subjected to multiple punishments for the same offense. <u>Lydon</u>, 466 U.S. at 307.

13

E.  Self Incrimination

Petitioner asserts in Ground Four that the Parole Board violated his Fifth Amendment privilege against self-incrimination by denying parole based on Petitioner's failure to discuss the crimes for which he was convicted and on the fact that he professed his innocence.  Relying on Paz v. Warden, Fed. Correc. Institution, 787 F.2d 469 (10th Cir. 1986), Petitioner argues that by forcing him to choose between maintaining his innocence and participating in a treatment program necessary for parole, the Parole Board punished him for not incriminating himself.  He specifically contends that a parole board "may not require an offender to confess his crimes as a prerequisite to parole."  (Pet. ¶ 37.)  However, Paz involved a federal inmate's claim that the United States Parole Commission abused its statutory discretion in denying parole.  The United States Court of Appeals for the Tenth Circuit agreed with the district court that the Parole Commission's decision not to alter Paz's release date was arbitrary.  "We recognize that an offender's inability to accept responsibility for the wrongfulness of his conduct may properly be considered by the Parole Commission in determining that the offender has not been rehabilitated."  Id. at 473.  However, the court ruled that, where the Commission insisted that Paz confess to a crime that he was never charged with, by overemphasizing this factor in its release decision, and by closing its eyes to overwhelming evidence of rehabilitation, the Commission did not comply with federal statutory law.  Id.  Because Paz involved interpretation of a federal statute and did not concern the Self-Incrimination Clause, it does not support Petitioner's self-incrimination claim.

Moreover, Supreme Court precedent on the Self-Incrimination Clause does not support Petitioner's claim.  In McKune v. Lile, 536 U.S. 24 (2002), the Supreme Court determined that,

14

by reducing a convicted sex offender's visitation rights, earnings, work opportunities, and other privileges, and transferring him to a maximum-security unit as a result of his refusal to participate in a sex offender treatment program requiring him to admit responsibility for the crime and to detail all prior sexual activities, including uncharged criminal offenses, prison officials did not compel the inmate to be a witness against himself under the Self-Incrimination Clause.  In Minnesota v. Murphy, 465 U.S. 420 (1984), the defendant feared being returned to prison for 16 years to life for violation of probation if he did not answer his probation officer's questions about a rape and murder unrelated to the probation, where the terms of defendant's probation required him to be truthful with his probation officer.  Defendant chose to admit his guilt to the rape and murder.  The Supreme Court found no Fifth Amendment violation, despite defendant's fear of being returned to prison for violation of probation if he didn't answer questions about the rape and murder truthfully.

     In light of McKune and Murphy, this Court finds that the state courts' adjudication of Petitioner's Self-Incrimination Clause claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  See Thorpe v. Grillo, 80 Fed. Appx. 215 (3d Cir. 2003) (prison officials did not violate Fifth Amendment by denying parole based on former inmate's refusal to admit that he had committed the sex offense for which he was convicted, even though victim later recanted); Ainsworth v. Stanley, 317 F.3d 1 1st Cir. 2002) (voluntary sexual offender treatment program which requires participant to admit crime and divulge offenses does not violate Self-Incrimination Clause, even though non-participation results in denial of parole).  Petitioner is not entitled to habeas relief under Ground Four.

F.  Judicial Bias

In Ground Five, Petitioner argues that Judge Yannotti, one of the judges on the Appellate Division panel considering his case, was biased and improperly failed to recuse himself from the case, even though Yannotti had represented the Parole Board in <u>Trantino v. N.J. State Parole Bd.</u>, 154 N.J. 19 (1998).  However, a judge's failure to <u>sua</u> <u>sponte</u> disqualify himself does not rise to the level of a constitutional claim.  <u>See</u> <u>Liteky v. United States</u>, 510 U.S. 540, 551 (1994); <u>United States v. Schreiber</u>, 599 F.2d 534 (3d Cir. 1979).  Because Yannotti's failure to <u>sua</u> <u>sponte</u> disqualify himself was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, Petitioner is not entitled to habeas relief on Ground Five.

G.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

H.  Motions

Respondents filed a motion to correct the docket and a motion to seal documents.  After reviewing Respondents' motion papers (no brief was filed), it is unclear to this Court which document(s) Respondents want this Court to seal, and whether Respondents are asking this Court to seal the documents from the public or from Petitioner.  Moreover, Respondents cite no federal law to support the motion to seal or the motion to correct the docket.  Under these circumstances and because this Court is dismissing the Petition on the merits, the Court will deny Respondents' motions as moot.

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition for a Writ of Habeas Corpus, denies Petitioner's motions, and denies a certificate of appealability.


 s/Robert B. Kugler
**ROBERT B. KUGLER, U.S.D.J.**


DATED:      June 30     , 2006